**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------
SHIVA STEIN,                                    :
                                                :
            Plaintiff,                          :   Civil Action No. 1:21-cv-5927
                                                :
v.                                              :
                                                :
                                                :   COMPLAINT FOR VIOLATIONS OF
QTS REALTY TRUST, INC., CHAD                    :   SECTIONS 14(a) AND 20(a) OF THE
WILLIAMS, PHILIP P. TRAHANAS, JOHN              :   SECURITIES EXCHANGE ACT OF
BARTER, JOAN DEMPSEY, CATHERINE                 :   1934
R. KINNEY, PETER A. MARINO, SCOTT               :
D. MILLER, MAZEN RAWASHDEH,                     :   JURY TRIAL DEMANDED
WAYNE REHBERGER, and STEPHEN E.                 :
WESTHEAD,                                       :
                                                :
            Defendants.                         :
-----------------------------------------------------  :
```

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against QTS Realty Trust, Inc. ("QTS or the "Company") and the members QTS board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of QTS by affiliates of Blackstone Infrastructure Partners L.P. and BRIET Operating Partnership L.P., which are in turn affiliates of The Blackstone Group Inc. ("Blackstone").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on July 8, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Company will merge with and into volt Lower Holdings LLC ("Merger Sub I") with Merger Sub I surviving the merger and whereby Volt Acquisition LP ("Merger Sub II") will merge with and into QualityTech, LP (the "Partnership") with the Partnership surviving. After both transactions, QTS will be owned by Blackstone Infrastructure Partners L.P. and BRIET Operating Partnership L.P. (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each QTS common share issued and outstanding will be converted into the right to receive $78.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked QTS stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Jefferies LLC ("Jefferies") and Morgan Stanley & Co. LLC ("Morgan Stanley") in support of their fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to QTS stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Blackstone and affiliates are headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of QTS common stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant Chad Williams has served as a member of the Board since 2013 and is the Chairman of the Board and President and Chief Executive Officer of the Company.

11.      Individual Defendant Philip P. Trahanas has served as a member of the Board since August 2013.

12.      Individual Defendant John Barter has served as a member of the Board since August 2013.

13.     Individual Defendant Joan Dempsey has served as a member of the Board since December 2020.

14.     Individual Defendant Catherine R. Kinney has served as a member of the Board since August 2013.

15.     Individual Defendant Peter A. Marino has served as a member of the Board since August 2013.

16.     Individual Defendant Scott D. Miller has served as a member of the Board since August 2013.

17.     Individual Defendant Mazen Rawashdeh has served as a member of the Board since September 2018.

18.     Individual Defendant Wayne Rehberger has served as a member of the Board since March 2019.

19.     Individual Defendant Stephen E. Westhead has served as a member of the Board since August 2013.

20.     Defendant QTS is incorporated in Maryland and maintains its principal offices at 12851 Foster Street, Overland Park, Kansas 66213.  The Company's common stock trades on the New York Stock Exchange under the symbol "QTS."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.      The Proposed Transaction

23.      QTS is a leading provider of data center solutions across a diverse footprint spanning more than 7 million square feet of owned data center space throughout primarily North America and Europe. Through its software-defined technology platform, QTS is able to deliver secure, compliant infrastructure solutions, robust connectivity and premium customer service to leading hyperscale technology companies, enterprises, and government entities. QTS owns, operates or manages 27 data centers and supports more than 1,200 customers primarily in North America and Europe.

24.      On June 7, 2021, QTS and Blackstone jointly announced that they had entered into a proposed transaction:

> OVERLAND PARK, Kan. and NEW YORK, June 7, 2021 /PRNewswire/ -- QTS Realty Trust (NYSE: QTS) ("QTS" or "the Company") and Blackstone (NYSE: BX), today announced that they have entered into a definitive agreement under which Blackstone Infrastructure Partners, Blackstone Real Estate Income Trust, Inc. and other long-term perpetual capital vehicles managed by Blackstone will acquire all outstanding shares of common stock of QTS Realty Trust for $78.00 per share in an all-cash transaction valued at approximately $10 billion[1], including the assumption of debt. The purchase price represents a premium of 21% to QTS' closing share price as of June 4, 2021 and a 24% premium to the volume weighted average share price over the last 90 days. The transaction was unanimously approved by the QTS Board of Directors and is expected to close in the second half of 2021.
>
> Blackstone's interest in acquiring QTS and its commitment to investing in its platform is a testament to the QTS team's success in building a leading data center company. Blackstone's expertise, resources and consistent access to capital will support QTS' growth and help expand the reach of its data center solutions supporting new and existing customers. Upon completion of the transaction, the parties expect that QTS will continue to be led by its senior management team and maintain its corporate headquarters in Overland Park, Kansas.

"We are pleased to enter into this transaction with Blackstone, as it will deliver compelling, immediate and certain value to stockholders while positioning QTS to continue supporting customers' expanding data center infrastructure needs," said Philip Trahanas, Lead Director of the QTS Board of Directors. "The QTS Board regularly reviews the Company's strategy and market opportunities to maximize stockholder value, and we are confident this transaction achieves that objective."

"QTS is powered by its people and continues to set a new standard for service delivery in the data center industry," said Chad Williams, Chairman and CEO of QTS. "We see a significant market opportunity for growth as hyperscale customers and enterprises continue to leverage our world-class infrastructure to support their digital transformation initiatives. We are confident this transaction is the right step to achieve our strategic objectives in our next phase of growth. I want to thank each of our QTS employees for their continued dedication to a culture of service to others, which has positioned QTS to enter into this transformative transaction."

"We are delighted to back QTS and its world-class management team as they continue to scale the company to meet the rising demand for data centers. QTS aligns with one of Blackstone's highest conviction themes – data proliferation – and the required investment makes it well suited as a long-term holding for our perpetual capital vehicles. We are committed to a strong, lasting partnership, leveraging Blackstone's scale, reach, resources and access to capital to drive long-term growth at QTS," said Greg Blank, Senior Managing Director, Blackstone Infrastructure Partners.

"We are focused on investing in assets that are benefitting from strong, secular tailwinds, such as the rapid digitalization of data. QTS is a leading provider of data center solutions with a portfolio of high-quality assets in desirable markets, positioning it well to capitalize on these powerful trends in the data center space. We believe the vast expertise across our business will enable the QTS platform to succeed over the long-term," said Tyler Henritze, Head of Acquisitions Americas for Blackstone Real Estate.

**Transaction Terms, Timing and Approvals**

6

The definitive merger agreement includes a 40-day "go-shop" period that will expire on July 17, 2021, subject to extension under certain circumstances, which permits QTS and its representatives to actively solicit and consider alternative acquisition proposals. QTS has the right to terminate the definitive merger agreement with Blackstone to enter into a superior proposal subject to certain terms and conditions of the definitive merger agreement. There can be no assurance that this process will result in a superior proposal, and QTS does not intend to disclose developments with respect to the go-shop process unless and until it determines such disclosure is appropriate or is otherwise required.

The transaction with Blackstone is expected to close in the second half of 2021, subject to approval by QTS' stockholders and the satisfaction of other customary closing conditions.

Subject to and upon completion of the transaction, QTS' common stock will no longer be listed on the New York Stock Exchange. QTS will be jointly owned by Blackstone Infrastructure Partners and Blackstone Real Estate Income Trust ("BREIT").

**Advisors**
Jefferies LLC and Morgan Stanley & Co. LLC are acting as financial advisors to QTS, and Hogan Lovells US LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP are acting as legal counsel to QTS. Citigroup Global Markets Inc., Barclays, Deutsche Bank Securities Inc., Goldman Sachs & Co. LLC and J.P. Morgan Securities LLC are acting as financial advisors to Blackstone, and Simpson Thacher & Bartlett LLP is acting as its legal counsel.

* * *

25.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that QTS's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Proxy Statement**

26.      On July 8, 2021, QTS filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning QTS Financial Projections*

27.      The Proxy Statement fails to provide material information concerning financial projections by QTS management and relied upon by Morgan Stanley in its analysis. The Proxy Statement discloses financial projections for the Company prepared by Company management and extrapolations prepared by Morgan Stanley which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that QTS management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Unlevered Free Cash Flows, Operating Funds from Operations; and Adjusted Funds from Operatoins, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Morgan Stanley's Financial Analysis*

32.     With respect to Morgan Stanley's *Comparable Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Morgan Stanley in the analysis.

33.     With respect to Morgan Stanley's *Dividend Discount Analysis* for the Company, the Proxy Statement fails to disclose: (i) implied terminal value of the Company as of December 31, 2024; (ii) inputs and assumptions underlying the range of multiples of 19.0x to 25.0x; (iii) the basis for applying a discount rate of 5.5% to 7.5%; and (iv) the Company's cost of equity.

34.     With respect to Morgan Stanley's *Premiums Paid* analysis, the Proxy Statement fails to disclose: (i) the implied premiums for the transactions observed; (ii) the closing share price on the last trading day prior to announcement for each acquired company; and (iii) the premia of the transactions observed.

35.     With respect to Morgan Stanley's *Multiples Paid* analysis, the Proxy Statement fails to disclose: (i) the implied fully-diluted enterprise value of the target companies; (ii) analyst estimates of the next-twelve-months EBITDA of the target companies; (iii) net debt and Series A preferred stock balances; and (iv) number of fully-diluted shares of the Company.

36.     With respect to Morgan Stanley's *Research Analysts Price Targets and NAV Targets* analysis, the Proxy Statement fails to disclose: (i) the future public market trading price targets for the Company; (ii) the equity research analysts observed; (iii) the dates of publishing of

the price targets; and (iii) analyst estimates of NAV per share of Class A common stock and the corresponding equity research analysts.

37.     With respect to Morgan Stanley's *Forward Stock Price* analysis, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of AFFO multiples of 18.4x 5o 24.5x; (ii) the basis for using a discount rate of 6.5%.

38.     With respect to Jefferies' *Seclted Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Jefferies in the analysis.

39.     With respect to Jefferies' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics and time frame for the transactions observed by Jefferies in the analysis.

40.     With respect to Jefferies' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) implied terminal value of the Company; (ii) inputs and assumptions underlying the range of multiples of 21.0x to 25.0x; (iii) the basis for applying a discount rate of 5.6% to 7.6%; and (iv) the Company's weighted cost of capital.

41.     With respect to Jefferies' *Dividend Discount Model Analysis*, the Proxy Statement fails to disclose: (i) implied terminal value of the Company; (ii) inputs and assumptions underlying the range of multiples of 21.0x to 25.0x; (iii) the basis for applying a discount rate of 6.7% to 8.7%; and (iv) the Company's cost of equity.

42.     With respect to Jefferies' price targets analysis, the Proxy Statement fails to disclose: (i) the future public market trading price targets for the Company; (ii) the equity research analysts observed; and (iii) the dates of publishing of the price targets.

43.     With respect to Jefferies' implied premiums paid analysis, the Proxy Statement fails

to disclose: (i) the implied premiums for the transactions observed; (ii) the closing share price on

the last trading day prior to announcement for each acquired company; and (iii) the premia of the

transactions observed.

44.     In sum, the omission of the above-referenced information renders statements in the

Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with

irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in

order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

47.     Defendants have issued the Proxy Statement with the intention of soliciting

stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy

Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Morgan Stanley and Jefferies and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

49.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

50.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of QTS within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of QTS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of QTS, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of QTS, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

55.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 9, 2021                                 **MELWANI & CHAN LLP**

                                                    By:  /s *Gloria Kui Melwani*
                                                    Gloria Kui Melwani (GM5661)
                                                    1180 Avenue of the Americas, 8th Fl.
                                                    New York, NY 10036
                                                    Telephone: (212) 382-4620
                                                    Email: gloria@melwanichan.com

                                                    *Attorneys for Plaintiff*